AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **22mr1779**
)
INFORMATION ASSOCIATED WITH FACEBOOK ID )
100079636774688 THAT IS STORED AT PREMISES )
CONTROLLED BY META PLATFORMS, INC. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachement A, which is incorporated by reference.

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachement B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 | Interference with commerce by robbery |
| 18 USC 924(c) | Use/carrying/possession firearm during and in furtherance of crime of violence. |
| 18 USC 922(g)(1) | Felon in possession of a firearm and ammunition. |

The application is based on these facts:
See attached affidavit, which is incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Samuel Hartman, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Sworn Telephonically signed Electronically   *(specify reliable electronic means)*.

*Judge's signature*

Date: 12/1/2022

City and state: Albuquerque, New Mexico    Honorable Steven C. Yarbrough, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID **100079636774688** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. _____ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Samuel Hartman, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc. (Meta), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. The information to be searched is associated with Facebook user ID **100079636774688** and the screenname "Eddy Martinez" (the TARGET ACCOUNT). As described below, there is probable cause to believe Ricky Eddie Martinez Jr. (MARTINEZ) has used the TARGET ACCOUNT in furtherance of violations of 18 U.S.C. § 1951, 18 U.S.C. § 924(c), and 18 U.S.C. §§ 922(g)(1).

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April 2009. I am currently assigned to the Albuquerque Field Office to investigate violations of Federal law. My experience as a Special Agent includes but is not limited to: writing affidavits for and executing search and seizure warrants for social media accounts (Facebook, Instagram, WhatsApp, and Snapchat), and reviewing the data returned from such searches for evidence. I have also spoken with other law enforcement officers with expertise and experience in this area.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that MARTINEZ has committed violations 18 U.S.C. § 1951, 18 U.S.C. § 924(c), and 18 U.S.C. §§ 922(g)(1), and that MARTINEZ has used the TARGET ACCOUNT in furtherance of those crimes. Therefore, there is probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

6. Beginning August 9, 2022, the Espanola Police Department and FBI started investigating a string of armed robberies in and around Espanola, NM and northern New Mexico. There were six total robberies in Espanola, one in Taos, NM, and on in Santa Fe, NM. The subject of the robberies was identified as MARTINEZ and his crime spree concluded on August 16, 2022.

7.  On August 16, 2022, Espanola Police Department (EPD) officers responded to an attempted robbery and homicide at Blake's Lotaburger located at 206 North Paseo De Onate, Española, NM 87532. Through a series of witness interviews, EPD officers and FBI SAs learned that, at approximately 9:30 p.m., MARTINEZ entered the restaurant. While placing a food order with the employee at the counter, MARTINEZ brandished what appeared to be a firearm described as a silver .380 revolver, and stated "give me the fucking money", fired one round that hit the employee in the chest, jumped over the counter, and pistol whipped another employee approximately six times in the back of head. MARTINEZ then attempted to breach the cashier's drawer but was unsuccessful and left the restaurant on foot. The employee MARTINEZ shot in the chest died. FBI Special Agents recovered one silver revolver bearing the description "AMADEO ROSSI S.A." from the scene.

8.  On August 17, 2022, a day after MARTINEZ murdered the employee at Blake's Lotaburger, the FBI submitted an exigent request for information held by Meta for a Facebook account used by MARTINEZ in an effort to identify MARTINEZ's location for arrest. Specifically, the FBI identified MARTINEZ's account as the TARGET ACCOUNT, and requested pen register/trap and trace information along with location information. The information provided by Meta confirmed the account belonged to MARTINEZ and provided his cell phone number as 505-521-4805. In addition, the Meta records showed he was active on 08/15/2022 at 15:50 UTC. The records did not provide a mobile phone location for MARTINEZ.

9.  On August 17, 2022, deputy United States Marshals arrested MARTINEZ in Santa Fe, NM and the exigent information requested from Meta was terminated immediately.

10. On September 13, 2022, a federal grand jury returned an indictment charging MARTINEZ with multiple violations 18 U.S.C. § 1951, that being Interference with Commerce by Robbery; 18 U.S.C. § 924(c)(1)(A) of Using, Carrying, and Brandishing/Discharging a Firearm During and in Relation to a Crime of Violence; and one count of 18 U.S.C. §§ 922(g)(1) and 924: Felon in Possession of a Firearm and Ammunition, for offenses that occurred between August 9-16, 2022:

11. During the investigation, the FBI has identified three likely accomplices. The first, A.T., was interviewed by the FBI and also had her residence searched by the FBI. During an interview with the FBI, A.T. stated she had met MARTINEZ on Facebook, began communicating on Facebook, and eventually met in person. At one point, A.T. was pregnant with MARTINEZ's child. Also, A.T.'s residence was searched twice by the FBI (on 08/17/2022 and 08/19/2022) and evidence of MARTINEZ's crimes were recovered each time.

12. A second likely accomplice, C.F., had her cellular telephone searched by the FBI. The search produced a text message string between C.F. and MARTINEZ on August 14, 2022 that stated the following:

   a. MARTINEZ: "You're calling me in the middle of me robbing someone hold on.!"
   b. C.F: "Why are you robbing without me"

13. Additional examination of the phone showed C.F. taking a screenshot from Facebook. The screenshot was a post about the Dollar General getting robbed. A third likely accomplice, A.U., had her home searched by the FBI after MARTINEZ's arrest. The searching Agents found multiple items used by MARTINEZ from some of the robberies he committed. A.U. and A.T. also knew each other. On or about August 16, 2022, A.T. told interviewing FBI

Agents that she received a Facebook post from A.U. reporting on the recent attempted robbery and homicide at the Blake's Lotaburger.

14.  As stated above, A.T. communicated with MARTINEZ via Facebook, and A.T. and A.U. used Facebook to pass information, and Facebook data received via emergency disclosure showed MARTINEZ active between August 10 -15, 2022. Also, MARTINEZ communicated to C.F. via mobile device that he was in the process of robbing someone when C.F. tried reaching out. Both instances show that MARTINEZ communicates through Facebook, and will use a mobile device, the #1 way to access Facebook, to communicate to others that he has or was in the middle of committing a crime. Not only is using a mobile device the #1 way to access Facebook, but Facebook Messenger is one of the top applications for individuals to communicate through worldwide. Through training and experience, your Affiant knows criminals often times communicate through Facebook as a means to communicating without cellular service when WiFi is available.

15.  Because MARTINEZ communicated with one of his accomplices via Facebook, that two of his accomplices communicated with each other via Facebook, and the fact that the Facebook records showed the phone active on August 15, 2022, your Affiant believes there is probable cause to believe that evidence of violations of 18 U.S.C. § 1951: Interference with Commerce by Robbery; 18 U.S.C. § 924(c)(1)(A) of Using, Carrying, and Brandishing/Discharging a Firearm During and in Relation to a Crime of Violence; and 18 U.S.C. §§ 922(g)(1) and 924: Felon in Possession of a Firearm and Ammunition may be found in MARTINEZ's Facebook account between the dates of August 8, 2022 and August 17, 2022.

**Facebook Description and Features**

16. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

17. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

18. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

19. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these

6

privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

20.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

21.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

22.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a

7

chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

23. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

24. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

25. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

26. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

27. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

28. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

29. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

30. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

31. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and

tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

34. Based on the foregoing, I request that the Court issue the proposed search warrant.

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

36. AUSA Mark Pfizenmayer has reviewed and approved this application.

Respectfully submitted,

_____
Samuel Hartman
Special Agent
Federal Bureau of Investigation

Telephonically sworn and electronically signed
This __1st__ day of December, 2022.

_____
HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID **100079636774688** (the Target Account) that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the ID listed in Attachment A, **for the time period of August 8, through August 17, 2022**:

(a) All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 1951, 18 U.S.C. § 924(c), and 18 U.S.C. 922(g)(1) involving Ricky Eddie Martinez Jr. **for the time period of August 8, through August 17, 2022,** and information pertaining to the following matters:

(a) Evidence of the possession, procurement, or sale of illegal drugs;

(b) Evidence of the possession, procurement, or sale of firearms and/or ammunition;

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation; and

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

4